# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

SARAH S.,[1]

                              Plaintiff,

v.

FRANK BISIGNANO,[2]                                    Case No. 3:23-cv-00090-MMS
Commissioner of the Social Security Administration,

                              Defendant.

## DECISION AND ORDER

On November 16, 2016, February 14, 2017, and May 31, 2017, Sarah S. ("Plaintiff") filed applications under Title II of the Social Security Act, with an alleged onset date of December 6, 1999.[3] On February 21, 2018, Plaintiff filed an application under Title XVI of the Social Security Act, with an alleged onset date of February 14, 2018.[4] Plaintiff has exhausted her administrative remedies and timely filed a Complaint seeking relief from this Court.[5] Plaintiff's Opening Brief asks the Court to reverse the

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] As of May 7, 2025, Frank Bisignano is the Commissioner of the Social Security Administration and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] A.R. 859 (Title II Disability Insurance Benefits), 875 (Title II Child Insurance Benefits on account of John Sutton-Gamache), 881–82 (Title II Survivors Benefits on account of Daisy M.L. Jones).

[4] A.R. 883 (Title XVI Supplemental Security Income).

[5] Docket 1 (Plaintiff's Compl.).

Commissioner's decision and remand for further proceedings under sentence four of 42 U.S.C. § 405(g).[6]  The Commissioner filed the Administrative Record as his Answer and a Response Brief.[7]  Plaintiff did not file a reply.  Oral argument was not requested and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[8]  For the reasons discussed below, Plaintiff's request for relief at Docket 22 is GRANTED.

## I.    STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[9]  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[11]  In reviewing the agency's determination, the Court considers the

---

[6] Docket 22 at 18 (Plaintiff's Brief).

[7] Docket 11 (Notice of Lodging Admin. Record); Docket 21 (Supplemental Notice of Lodging Admin. Record); Docket 24 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record."  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[8] 42 U.S.C. § 405(g), Fed. R. Civ. P. 73 ("[A] magistrate judge may, if all parties consent, conduct a civil action or proceeding[.]"), 28 U.S.C. § 636(c).  Here, the parties did not timely submit a declination of consent for the reassignment of this case to United States Magistrate Judge Matthew M. Scoble.  Docket 25; *see Washington v. Kijakazi,* 72 F.4th 1029, 1036–37 ("We conclude that the declination-of-consent form used in this case fulfills the requirements of implied consent . . ..").

[9] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[10] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[11] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge's ("ALJ") conclusion.[12] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[13] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[14] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[15] The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[.]"[16] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[17] However, this duty exists "even when the claimant is represented by counsel."[18]

## II. DETERMINING DISABILITY

---

[12] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[13] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted).

[14] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

[15] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[16] *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)).

[17] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).

[18] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB"), under Title II, to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19] In addition, Supplemental Security Income ("SSI"), under Title XVI, may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[22]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through

---

[19] 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1381a.

[21] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

four in order to make a prima facie showing of disability.[24]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[27]  *The ALJ first determined that Plaintiff had not attained age 22 as of December 6, 1999, the alleged onset date.  The ALJ then determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2009.  The ALJ determined that Plaintiff had not engaged in substantial activity since December 6, 1999, the alleged onset date.[28]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[29]  *The ALJ made three determinations.  As to the*

---

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[26] *Tackett*, 180 F.3d at 1101 (emphasis in original).

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 1573.

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

*Title II application for DIB based on disability prior to March 31, 2009, the date last insured, the ALJ determined that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. As to the Title II applications for child's insurance benefits based on disability prior to December 5, 2005, the date Plaintiff attained age 22, the ALJ determined that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. As to the Title XVI application for SSI since the application date of February 14, 2018,[30] the ALJ determined that Plaintiff had the following severe impairments: autism spectrum disorder; schizoaffective disorder, bipolar type; and intermittent explosive disorder.[31] The ALJ noted that the remainder of the decision addressed Plaintiff's Title XVI claims.[32]*

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[33] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[34]*

---

[30] The application summary in the record shows an application date of February 21, 2018, with an alleged onset date of February 14, 2018. A.R. 883.

[31] A.R. 1573–74.

[32] A.R. 1574.

[33] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[34] A.R. 1574.

Residual Functional Capacity.  Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[35]  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[36]  *The ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but was limited to occasional superficial interaction with the public, coworkers, and supervisors.*[37]

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[38]  Otherwise, the evaluation process moves to the fifth and final step.[39]  *The ALJ determined that Plaintiff had no past relevant work.*[40]

**Step 5.**  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[41]

---

[35] 20 C.F.R. §§ 404.1545(a), 416.945(a).

[36] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[37] A.R. 1576.

[38] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[39] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[40] A.R. 1581.

[41] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

*The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including Janitor (DOT # 381.687-018), Hand packager (DOT # 920.587-018), and Auto detailer (DOT # 915.687-034).[42]*

The ALJ concluded that Plaintiff was not disabled at any time from December 6, 1999, the alleged onset date, through October 25, 2024, the date of the ALJ's decision.[43]

### III.    PROCEDURAL BACKGROUND

On August 29, 2017, Plaintiff's Title II DIB claim and two child insurance benefit claims (together, "Title II claims"), were denied at the initial level.[44]  On November 4, 2017, Plaintiff requested a hearing before an ALJ.[45]  Plaintiff applied for SSI on February 21, 2018.[46]

At Plaintiff's first hearing before an ALJ on December 19, 2018, the medical expert's testimony was not audible on the recording.[47]  Plaintiff attended a second hearing with representation before an ALJ on May 15, 2019.[48]  Plaintiff did not give testimony because she was asked to leave the hearing room for continuing to interrupt the witness after multiple warnings that her behavior would result in removal.[49]  On March 18, 2020,

---

[42] A.R. 1582.

[43] A.R. 1582–83.

[44] A.R. 162–64.

[45] A.R. 227.

[46] A.R. 883.

[47] A.R. 1623.

[48] A.R. 85–143.

[49] A.R. 129–30.

the ALJ issued an unfavorable decision, denying Plaintiff's Title II and Title XVI claims.[50] On November 18, 2020, the Appeals Council remanded the ALJ's decision to reconsider the medical opinion evidence and develop the record.[51] Plaintiff testified telephonically with representation before an ALJ at a third hearing on January 20, 2022.[52] The ALJ issued an unfavorable decision on March 30, 2022.[53] On March 2, 2023, the Appeals Council denied her request for review of the ALJ decision.[54] Plaintiff timely appealed to this Court on April 24, 2023.[55] On August 21, 2023, the Court granted the Commissioner's unopposed motion to remand for further proceedings, due to the inaudible December 2018 recording, and retained jurisdiction pursuant to sentence six of 42 U.S.C. § 405(g).[56] On May 16, 2024, Plaintiff testified, with representation, at a fourth hearing before an ALJ.[57] The ALJ issued an unfavorable decision on October 25, 2024.[58] On March 17, 2025, the Court granted the Commissioner's unopposed motion to reopen the case.[59]

## IV. DISCUSSION

---

[50] A.R. 168–77.

[51] A.R. 187–89.

[52] A.R. 54–84.

[53] A.R. 22–43.

[54] A.R. 1–5.

[55] Docket 1.

[56] Docket 16.

[57] A.R. 1595–1616.

[58] A.R. 1570–83.

[59] Docket 19.

Plaintiff is represented by counsel in this appeal. Plaintiff alleges that: (1) the ALJ's discussion of the medical opinion evidence was not supported by substantial evidence in the record; (2) the ALJ "failed to give appropriate consideration" to the lay witness statements; and (3) the ALJ's finding that Plaintiff did not have a severe impairment before her 22nd birthday conflicted with the ALJ's finding that Plaintiff's autism was a severe impairment, and was not supported by substantial evidence in the record.[60] The Commissioner disagrees and asks the Court to affirm the ALJ's decision.[61]

## A.   Medical Opinion Evidence

Plaintiff alleges that the ALJ erred by discounting the neuropsychological evaluation by Gayle, Fay, Ph.D., on May 9, 2017, and the psychiatric evaluation by Daniel Gonzalez, Ph.D., on October 9, 2021.[62] Plaintiff also alleges that the ALJ erred by assigning weight to the testimony of medical expert Colette Valette, Ph.D.[63] The Commissioner contends that the ALJ reasonably evaluated the medical opinion evidence and Plaintiff's alternative interpretation of the record does not justify remand under the substantial evidence standard.[64]

Plaintiff asserts that the regulations in effect prior to March 27, 2017 should govern the ALJ's evaluation of the medical opinion evidence and the Commissioner does not

---

[60] Docket 22 at 4–17.

[61] Docket 24 at 2–8.

[62] Docket 22 at 4–10.

[63] *Id.* at 11–12.

[64] Docket 24 at 2–6.

dispute this.[65]  Plaintiff protectively filed her first application on or about November 16, 2016.[66]  Therefore, the regulations governing the evaluation of medical evidence before March 27, 2017, are applicable here.[67]

### 1.    Legal Standards

Under the regulations in effect before March 27, 2017 ("prior regulations"), medical opinions are evaluated based on the type of physician rendering the opinion: (1) those who treat the claimant; (2) those who examine but do not treat the claimant; and (3) those who neither examine nor treat the claimant.[68]  Under the prior regulations, when "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[69]  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[70]

Factors relevant to evaluating any medical opinion include: (1) the examining or treating relationship; (2) the consistency of the medical opinion with the record as a whole; (3) the physician's area of specialization; (4) the supportability of the physician's opinion

---

[65] Docket 22 at 4; Docket 24 at 2; *see* 20 C.F.R. §§ 404.1527, 416.927.

[66] A.R. 859.  *See* 20 C.F.R. § 404.614.

[67] *See* SSA POMS DI 24503.050D.2.a. ("[U]se the earliest possible filing date of the claims to determine which set of rules to follow.  If the earliest filing date of the claims is . . . [b]efore March 27, 2017, use the prior rules[.]").

[68] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[69] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[70] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

through relevant evidence; and (5) other relevant factors, such as the physician's degree of familiarity with the SSA's disability process and with other information in the record.[71] An ALJ may reject the opinion of a doctor "if that opinion is brief, conclusory, and inadequately supported by clinical findings."[72]

The opinions of agency physician consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source.[73] "The weight afforded a non-examining physician's testimony depends 'on the degree to which he provides supporting explanations for his opinions.'"[74] Greater weight may also be given to the opinion of a non-examining expert who testifies at a hearing because he is subject to cross examination.[75] The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.[76]

### 2. Medical Opinion of Gayle Fay, Ph.D.

On May 9, 2017, Gayle Fay, Ph.D., a clinical neuropsychologist, conducted a neuropsychological assessment of Plaintiff. She administered several tests, including the Conners Continuous Performance Test, Minnesota Multiphasic Personality Inventory,

---

[71] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). These sections apply to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.614.

[72] *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

[73] 20 C.F.R. §§ 404.1513a(b), 416.913a(b), 404.1527(e), 416.927(e).

[74] *Garrison,* 759 F.3d at 1012 (alterations omitted).

[75] Andrews v. Shalala, 53 F.3d 1035, 1042 (citing Torres v. Secretary of H.H.S., 870 F.2d 742, 744 (1st Cir. 1989)).

[76] *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

Scales of Independent Behavior – Revised, and the Wechsler Adult Intelligence Scale – IV.[77]  She diagnosed Plaintiff with Autism Spectrum Disorder without accompanying intellectual or language impairment; Schizoaffective Disorder - Bipolar Type; Bipolar Disorder; and Intermittent Explosive Disorder.[78]  Dr. Fay opined that Plaintiff experienced dysregulation; an inability to maintain relationships (even with adoptive parents); an inability to take the perspective of others; schizoaffective issues; and attention deficit disorder with hyperarousal and disruptive mood.[79]  She opined that Plaintiff was severely impaired in her ability to exhibit independent behavior.[80]  She opined that Plaintiff needed "immediate psychiatric hospitalization" with supportive housing, employment, medication, and mental health therapy.[81]  Dr. Fay also opined that Plaintiff should be considered a candidate for guardianship "in light of [her] developmental history."[82]

Based on psychological testing, her observation of Plaintiff's behavior during the assessment, a review of records, and an intake form provided by Plaintiff's adoptive parents, Dr. Faye provided a mental residual functional capacity.[83]  She opined that Plaintiff was markedly limited in her ability to understand and remember; ability to sustain concentration and persist; and her ability to adapt to work settings, normal hazards, travel,

---

[77] A.R. 1197–1205.

[78] A.R. 1205.

[79] A.R. 1197.

[80] Id.

[81] A.R. 1204.

[82] Id.

[83] A.R. 1198–1209.

or set goals or plans independently.[84]  Dr. Faye also opined that Plaintiff was markedly limited in her ability to interact with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior.[85]

Dr. Fay's opinion was contradicted by medical expert Colette Valette, Ph.D., at the May 15, 2019 hearing.[86]  Consequently, under the prior regulations, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Fay's examining opinion.[87]   The ALJ gave some weight to Dr. Fay's statements clarifying Plaintiff's diagnoses.[88]  However, the ALJ gave Dr. Fay's opinions little weight as inconsistent with the record, "which does not suggest such extensive mental functional limitation" since the February 2018 amended alleged onset date.[89]  He reasoned that the "generally mild mental status exam findings in the treatment records," the limited mental health treatment in the record, and the extent of Plaintiff's daily activities conflicted with Dr. Fay's opinions.[90]   The ALJ also pointed to the testing Dr. Fay performed which

---

[84] A.R. 1206–07.

[85] A.R. 1207.

[86] A.R. 118–126.

[87] *See Revels,* 874 F.3d at 654.

[88] A.R. 1579–80.

[89] A.R. 1580.

[90] Id.

demonstrated "intellectual functioning in the average range."[91]  However, for the following reasons, the ALJ did not offer specific and legitimate reasons supported by substantial evidence for rejecting Dr. Fay's examining medical opinion.

   *a. Treatment Notes*

   Although the consistency of a medical opinion with treatment notes is a relevant factor in the ALJ's evaluation of that opinion, mental examinations must be considered in the context of the medical record overall.[92]  Here, the ALJ referenced mental status examinations at emergency department visits and other medical care visits that showed "normal mood and affect, calm and cooperative attitude, appropriate behavior, linear thought process, and no cognitive defects."[93]

   However, the normal status examinations at medical care visits cited by the ALJ do not necessarily conflict with Dr. Fay's medical opinions and resulting mental residual functional capacity assessment.  Dr. Fay's assessment did not primarily concern Plaintiff's

---

[91] Id.

[92] *See Ghanim,* 763 F.3d at 1161; *Orn v. Astrue,* 495 F.3d 625, 634 (9th Cir. 2007).

[93] A.R. 1575, 1580.  *See e.g.,* A.R. 1416 (normal affect, linear thought processes, euthymic at follow up appointment after the birth of twins), 2019 (Normal mood and affect), 2177 (Alert and oriented, pleasant, cooperative, no acute distress), 2191 (Normal mood and affect), 2198 (Normal mood and affect, calm and cooperative), 2297 (Behavior appropriate for age, appropriately interacting with others at an ER visit for reported dental abscess). *But see e.g.,* A.R. 1419 (Normal affect, linear though process, euthymic.  At same appointment Plaintiff was "tearful about the pain [in her wrists] and frustrated because she has to care for the twins despite the pain."  The record also notes that Plaintiff was "feeling particularly stressed out as a single mom to twins.  She said she is sometimes concerned about the ability to put food on the table."), 2304 (Complaint of pain in ears and nose and that she could "hear something 'flying around.'"  "Appears uncomfortable. Behavior is cooperative."  "Behavior is anxious.")

behavior in her office during testing, but rather Plaintiff's impairments resulting from her autism, schizoaffective disorder, bipolar disorder, and intermittent explosive disorder.[94]

Moreover, the ALJ did not address the evidence which supported Dr. Fay's opinions and mental limitations assessment. While Dr. Fay observed that Plaintiff "worked willingly and cooperatively on all tasks presented," had few difficulties with the "quiet, one-on-one highly structured setting of testing," appeared well-organized during casual conversation, and tested intellectually at age-appropriate levels, she also noted that Plaintiff's performance showed significant areas of difficulty on formal assessment (e.g., Conners Continuous Performance Test and Scales of Independent Behavior) and that Plaintiff's communications during the assessment became "grandiose and poorly organized, having little foundation in reality" as these communications became longer and more elaborative.[95] Dr. Fay also administered the Minnesota Multiphasic Personality Inventory test (MMPI-2), which showed Plaintiff had difficulties controlling her behavior, could be expected to have intense outbursts of anger, and was likely to overreact to environmental events.[96] She noted that her testing showed Plaintiff could be confused and disoriented, blamed others for her problems, and was unable to understand or align herself with social expectations.[97]

And contrary to the ALJ's characterization, the treatment note showing a mental health screening conducted by Providence Family Medical Center, Maternal Psychosocial

---

[94] A.R. 1204.

[95] A.R. 1200–04.

[96] A.R. 1202.

[97] Id.

History & Needs Assessment in September 2018, was largely consistent with Dr. Fay's opinion.[98]  Although Plaintiff reported that she used coping strategies to reduce her anxiety and that she intended to start counseling, the provider also noted that Plaintiff displayed hyperactive motor behavior, talked quickly, and laughed frequently and loudly in a manner that was inappropriate to the topics discussed.[99]  The provider noted some tangential thinking, a minimization of the importance of the Alaska Office of Child Service ("OCS")'s investigation and potential criminal charges being brought against her partner, and a display of "little insight into the potential effects of marijuana and tobacco" on the fetal development of her twins.[100]

Consequently, the ALJ's citation of normal mental status exams in the medical record is not a specific and legitimate reason for discounting Dr. Fay's medical opinion and is not supported by substantial evidence.

### b.  Mental Health Treatment

Next, the ALJ discounted Dr. Fay's opinion because the record showed limited mental health treatment.[101]  In the Ninth Circuit, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[102]  Although the ALJ acknowledged Plaintiff's testimony that she had limited access to mental health services because she lives in a remote location and could

---

[98] A.R. 1408–11.

[99] A.R. 1410.

[100] Id.

[101] A.R. 1580.

[102] *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation and citation omitted).

not handle living in a city, the ALJ did not discuss or address this in the context of Dr. Fay's opinion.[103]  The ALJ also did not discuss Plaintiff's testimony that her attempts at treatment with medication made her feel like a "zombie."[104] For these reasons, the ALJ discounting of Dr. Fay's opinion based on Plaintiff's failure to access mental health services is not a specific and legitimate reason supported by substantial evidence.

### c.  Daily Activities

In the Ninth Circuit, a claimant's daily activities may provide a basis for discounting a medical opinion if they are inconsistent with the opinion or demonstrate transferable work skills.[105]  At the same time, a claimant "need not vegetate in a dark room to qualify for disability."[106]  Here, the ALJ discounted Dr. Fay's opinion based on "the extent of [Plaintiff]'s activities of daily living."[107]  The ALJ extracted statements from one record in which Plaintiff stated that she had four close friends in Anchorage that helped with social support and another statement by Plaintiff that she enjoyed crafts, landscaping, and construction and hitchhiked to get places.[108]  The ALJ concluded that this was evidence of Plaintiff's ability to "do a variety of complex mental tasks and handle some limited social interaction."[109]  However, the ALJ did not discuss specifically how these activities

---

[103] A.R. 1577, 1579–80.

[104] A.R. 1577.

[105] *Revels,* 874 F.3d at 664; *Orn,* 495 F.3d at 639.

[106] *Ferguson v. O'Malley,* 95 F.4th 1194, 1203 (9th Cir. 2024) (internal quotation and citation omitted).

[107] A.R. 1580.

[108] A.R. 1408–11, 1967.

[109] A.R. 1578.

contradicted Dr. Fay's opinion.[110]   Engaging in crafts, landscaping, construction, and hitchhiking are not obviously inconsistent with Dr. Fay's medical opinion or mental residual functional assessment.   And although landscaping and construction may be transferable work skills, it is unclear from the record evidence that Plaintiff could perform these activities in a work setting.[111]   Moreover, Plaintiff's single statement taken from a single record that she had close friends to provide social support is not sufficient to discount Dr. Fay's professional examination of Plaintiff.[112]

Therefore, the ALJ's stated reason for discounting Dr. Fay's medical opinion based on limited mental health treatment records was not a specific and legitimate reason supported by substantial evidence.

d.   Intellectual Testing

The ALJ also discounted Dr. Fay's examining medical opinion because her testing demonstrated Plaintiff had "intellectual functioning in the average range[.]"[113]   However, the ALJ did not explain how Plaintiff's average intelligence was inconsistent with Dr. Fay's mental function limitations.[114]   The ALJ focused on the favorable results from the

---

[110] A.R. 1579–80.

[111] See Garrison, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony . . . because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

[112] A.R. 1408.  See Ghanim, 763 F.3d at 1164 (finding error when the ALJ "cherry-picked" evidence as inconsistent instead of considering it in the context of the examining doctor's "diagnoses and observations of impairment.").

[113] A.R. 1580.

[114] See Garrison, 759 F.3d at 1012 (An "ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

intelligence test performed by Dr. Fay and Dr. Gonzales, but did not discuss any of the mental health assessments supporting the examining doctor's opinions and the lay statements, including those assessments indicating Plaintiff had difficulties with attention, controlling her behavior, social interaction, and utilizing her intellectual capabilities outside of a structured testing environment.[115]

Moreover, the ALJ did not address Dr. Fay's qualification of Plaintiff's intellectual testing results in the decision. Specifically, Dr. Fay explained that although Plaintiff "showed impressive capabilities" on her intellectual assessment, "the utilization of these capabilities in any context that is larger or less intensely structured than the testing session is nearly impossible, owing to her Autism issues as well as her attentional issues and her severe psychiatric issues."[116]

In sum, the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject Dr. Fay's medical opinion. On remand, the ALJ should discuss all relevant evidence in the context of Dr. Fay's opined limitations.[117]

3. *Medical Opinion of Daniel Gonzales, Ph.D.*

On October 9, 2021, Daniel Gonzales, Ph.D., conducted a mental status examination of Plaintiff for the Alaska State Disability Determination Services. Dr. Gonzales reviewed Dr. Fay's neuropsychological evaluation and a document outlining Plaintiff's social and psychological history submitted by Plaintiff's adoptive father,

---

[115] A.R. 1579–81. *See* A.R. 1202–04, 1426–27.

[116] A.R. 1204.

[117] *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006) (An ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected.).

conducted a clinical interview with Plaintiff, and administered the Wechsler Adult Intelligence Scale – IV psychological test.[118]  In his report, Dr. Gonzales opined that Plaintiff's ability to interact socially with others was markedly impaired, citing Plaintiff's self-reports and her adoptive father's statement.[119]

The ALJ assigned "little weight" to Dr. Gonzales's opinion that Plaintiff's ability to interact socially was markedly impaired because it was "inconsistent with the record as a whole[.]"[120]  Specifically, the ALJ pointed to treatment records showing a normal affect and mood, a calm and cooperative attitude, appropriate behavior and interactions, and a pleasant demeanor.[121]  The ALJ also discounted Dr. Gonzales's social interaction opinion based on "treatment notes demonstrating that the claimant has close friends who help her with social support" and Plaintiff's daily activities.[122]

Dr. Gonzales's opinion was contradicted by medical expert Colette Valette, Ph.D., at the May 15, 2019 hearing.[123]  Consequently, under the prior regulations, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Gonzales's examining opinion.[124]

---

[118] A.R. 1424–27.

[119] A.R. 1427.

[120] A.R. 1579.

[121] Id.

[122] Id.

[123] A.R. 118–126.

[124] *See Revels,* 874 F.3d at 654.

As with Dr. Fay's opinion, the ALJ did not explain how the mental status examinations at medical appointments and emergency room visits, the single treatment record in which Plaintiff stated she had four close friends in Anchorage to help with social support, and her daily activities conflicted with Dr. Gonzales's social interaction opinion.[125] Moreover, the ALJ did not consider Plaintiff's criminal records and records with OCS as evidence in support of Dr. Gonzales's social interaction opinion. Specifically, there are records showing Plaintiff has been incarcerated, yet the ALJ did not discuss these in the context of Plaintiff's ability to interact socially.[126] There is also evidence that Plaintiff has made requests to the SSA to include records showing investigations and proceedings, including medical evaluations, involving Alaska social services and her children.[127]

And although Dr. Gonzales's social interaction opinion appears to be based on Dr. Fay's and Plaintiff's adoptive father's reports and Plaintiff's self-reports rather than Plaintiff's behavior at the examination, it is consistent with Dr. Fay's opinion and the lay statement by Plaintiff's adoptive father.

Consequently, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Gonzales's examining opinion that Plaintiff was markedly limited in her ability to interact socially.

    4.    *Medical Expert Testimony of Colette Valette, Ph.D.*

---

[125] A.R. 1579.

[126] A.R. 1428–1566.

[127] A.R. 1020–21, 1841–43.

Plaintiff alleges that the ALJ should have addressed prior disciplinary actions in two states against Colette Valette, Ph.D., before relying on her testimony.[128] In response, the Commissioner asserts that Plaintiff does not challenge the ALJ's valid basis for assigning "great weight" to the parts of Dr. Valette's opinion that were consistent with the record.[129] The Commissioner also contends that although Dr. Valette's disciplinary history was a factor the ALJ should have considered, the ALJ was not required by the regulations to discuss this explicitly in his decision.[130]

Because this matter is remanded for further proceedings on other grounds, the Court does not address Plaintiff's argument that the ALJ erred by failing to address Dr. Valette's disciplinary history before relying on her testimony. However, Dr. Valette's disciplinary history certainly has an impact on her credibility, and the parties agree that the ALJ should consider this history in determining the weight to give Dr. Valette's expert testimony. The Court also notes that at least one ALJ in the Ninth Circuit has given "no weight" to the assessment of Dr. Valette because she was "no longer an eligible impartial examiner for the Social Security Administration."[131] Upon remand, the ALJ should consider the impact of Dr. Valette's disciplinary history on the weight of Dr. Valette's expert testimony pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c) and should consider explicitly discussing this in the new decision.

---

[128] Docket 22 at 11–12.

[129] Docket 24 at 4–5.

[130] *Id.* at 5–6.

[131] *Quinones v. Comm'r of Soc. Sec.,* Case No. 19CV274-W (BLM), 2019 WL 3817997, at *7 (S.D. Cal. Aug. 14, 2019), *adopted by* 2019 WL 4193391 (S.D. Cal. Sept. 4, 2019).

## B.    Lay Witness Statements

Plaintiff's adoptive father provided an extensive statement outlining Plaintiff's history and mental health conditions and testified at Plaintiff's May 2019 hearing. His statement and testimony describe Plaintiff's difficulties interacting with others, as well as her impulsiveness, irritability and anger, aggressiveness and hyperactivity, and poor attention and concentration.[132]  Plaintiff's adoptive mother provided a written statement describing Plaintiff's difficulties with her landlord, the Alaska Office of Children's Services, the police, and employers from approximately 2018 through January 2022.[133]  Plaintiff's former teacher provided a statement describing Plaintiff's anger, outbursts, and emotional volatility that affected Plaintiff's ability to maintain relationships at school.[134]  Plaintiff also noted that during the May 2019 hearing, she was removed from the hearing by security after her representative made several attempts to calm her down and refrain from interrupting the testimony.[135]

In the Ninth Circuit, the ALJ must consider competent lay testimony, but the ALJ need only provide reasons that are "germane to [the] witness" to reject it.[136]  Here, Plaintiff asserts that the lay statements by her adoptive mother, adoptive father, and former high school teacher "supported the conclusion that Plaintiff would not be able to function

---

[132] A.R. 1050–75, 1883–93.

[133] A.R. 1153–55.

[134] A.R. 1046–48.

[135] Docket 22 at 10; A.R. 129–30.

[136] Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

independently in a work environment and would be unable to interact appropriately with supervisors and co-workers on even an occasional basis."[137]

As with Dr. Fay's and Dr. Gonzales's medical opinions, the ALJ discounted all of the lay statements as inconsistent with the objective medical record.[138]  However, the lay statements support Dr. Fay's and Dr. Gonzales's opinions.

And although the standard for evaluating lay statements and testimony is less stringent than the specific and legitimate requirement for examining medical opinions under the relevant regulations, the ALJ did not provide substantial evidence supporting his rejection of Plaintiff's adoptive parents' statements and her former teacher's statement.  For the reasons set forth above, the mild mental status examinations, Plaintiff's single statement that she had four close friends in Anchorage, the limited mental health treatment in the record, and Plaintiff's daily activities do not constitute substantial evidence for rejecting the lay statements in this case.

Therefore, the ALJ failed to provide germane reasons for discounting Plaintiff's parents' statements and the statements of her former teacher.

## C.    Medically Determinable Impairments Prior to 2009

At Step Two, a social security claimant bears the burden of showing through medical evidence that she has a severe, medically determinable impairment.[139]  Before the ALJ may determine severity, a claimant must establish the existence of a medically

---

[137] Docket 22 at 13.

[138] A.R. 1580–81.

[139] 20 C.F.R. §§ 404.1520, 416.920.

determinable impairment.[140]  However, "under no circumstances may the existence of an impairment be established on the basis of symptoms alone."[141]  Therefore, Plaintiff can only establish an impairment if the record contains objective medical evidence in addition to symptoms.  At the same time, the step two analysis is "merely a threshold determination meant to screen out weak claims."[142]

Here, the ALJ found that Plaintiff's Title II DIB application and Title II applications for child's insurance benefits must be dismissed because there were no medical signs or laboratory findings to substantiate a medically determinable impairment prior to March 31, 2009, the date last insured, or December 5, 2005, the date Plaintiff attained age 22.[143]

Plaintiff alleges that the ALJ's finding that Plaintiff had no severe impairments prior to her date last insured cannot be reconciled with the ALJ's finding that Plaintiff's autism was a severe impairment for the purpose of her SSI application.[144]  Specifically, she alleges that the medical records and lay witness statements describing her symptoms in childhood show that these symptoms were "consistent with the diagnosis" of autism in

---

[140] 42 U.S.C. § 423 (d)(3) ("[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.").

[141] *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996) (alteration omitted)).

[142] *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987) (The social security administration "may require claimants to make a '*de minimis*' showing that their impairment is severe enough to interfere with their ability to work.")); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (characterizing Step Two as "a *de minimis* screening device [used] to dispose of groundless claims[.]") (internal citations omitted).

[143] A.R. 1573.

[144] Docket 22 at 15.

adulthood.[145] She asserts that the ALJ should have called a medical expert to clarify how Plaintiff's adult diagnosis of autism impacted "her ability to function independently prior to 2009."[146] The Commissioner responds that the ALJ did not have a duty to develop the record as it was not "ambiguous or inadequate; it simply showed no objective evidence establishing the existence of a medically determinable impairment prior to 2009" and that calling a medical consultant would not have been able to produce the objective evidence that is required to establish a medically determinable impairment.[147]

Although the medical record before 2009 does not provide a complete picture of Plaintiff's mental impairments during that time, it includes enough objective medical evidence to pass the de minimis threshold of step two. As shown below, the records contain clinical observations and mental status examinations of Plaintiff outside of Plaintiff's self-reports.[148]

For example, in June 1997, Plaintiff underwent a psychiatric evaluation. The evaluator interviewed Plaintiff with and without her parents and conducted a mental status examination.[149] The evaluator opined that Plaintiff was dressed appropriately; had good hygiene with good eye contact; a bright affect with exuberant laughter, but not out of

---

[145] Id.

[146] *Id.* at 17.

[147] Docket 24 at 7–8.

[148] *See Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1200 (9th Cir. 2008) ("There is nothing in the record to suggest . . . that Dr. Randhawa relied on [Plaintiff's] descriptions more heavily than his own clinical observations [.]"); *Ghanim,* 763 F.3d at 1162 ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").

[149] A.R. 1179–81.

range; normal speech and goal directed thought processes; had auditory hallucinations of her biological mother's voice calling her name; fair to poor insight; appropriate judgment for her age; and was grossly cognitively intact.[150]  In progress notes from 1997 and 1998, providers diagnosed Plaintiff with ADHD, Bipolar II, and "borderline traits;" prescribed and adjusted medications; and discussed her behaviors and moods in the sessions and in her daily life.[151]  In a record from 2000, the provider diagnosed Plaintiff with bipolar II.[152]  The provider opined that without medication, Plaintiff "would exhibit disabilities that impair function," but also noted that Plaintiff was stable on her current medications.[153]

In sum, the ALJ erred by ending the disability inquiry at step two for Plaintiff's Title II applications prior to 2009 and the Court remands on this issue.

## D.     Scope of Remand

When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation[.]"[154] Moreover, Plaintiff has requested remand for further proceedings.[155]  As discussed above, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Fay's and Dr. Gonzales's medical opinions.   The ALJ did not provide substantial evidence supporting his rejection of Plaintiff's adoptive parents' statements

---

[150] A.R. 1181.

[151] A.R. 1166–78.

[152] A.R. 1164.

[153] A.R. 1164–65.

[154] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).

[155] Docket 22 at 18.

and her former teacher's statement. On remand, the ALJ should also re-evaluate Dr. Valette's hearing testimony in the context of her disciplinary history and reassess the step two analysis for the treatment record before 2009. Therefore, this case is vacated and remanded for further administrative proceedings, including a de novo hearing and new decision, consistent with this Decision and Order.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 22 is GRANTED. The Commissioner's final decision is vacated and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with this Decision and Order. The Court directs the Clerk of Court to enter judgment in favor of Plaintiff and close this case accordingly.

DATED this 17th day of November, at Anchorage, Alaska.

_____
Matthew M. Scoble
United States Magistrate Judge